# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CLAUDE J. OWENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 05 C 4325 |
| | ) | |
| QUALITY HYUNDAI, | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Claude Owens ("Plaintiff" or "Owens") brings this action against Defendant Quality Hyundai ("Defendant" or "Quality") under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. Plaintiff took a leave of absence from his sales job with Defendant in order to have eye surgery to correct blindness suffered as a complication of his diabetes. When Plaintiff sought to return to work nearly a year later, Defendant informed him that it was fully staffed and that he would not be allowed to return to work. Plaintiff alleges that Defendant terminated him because of his disability and without making an effort to reasonably accommodate his disability. Defendant has moved for summary judgment on the grounds that Plaintiff is not a qualified individual for purposes of the ADA and that Plaintiff cannot demonstrate that he suffered an adverse action because of his disability.

Genuine issues of material fact exist as to whether Plaintiff could have performed the essential job functions with or without a reasonable accommodation at the time of his termination – that is, whether he was "a qualified individual." No genuine issues of material fact exist, however, as to whether Defendant terminated Plaintiff because of his disability or failed to reasonably accommodate his disability. Because Plaintiff's evidence does not raise a reasonable inference that

discrimination motivated Defendant's employment action and because Defendant was not required to accommodate Plaintiff by keeping open a position for him during his lengthy, indefinite absence, Defendant is entitled to judgment as a matter of law.

## Statement of Facts

Plaintiff Owens worked as a car salesman, or Sales Specialist, at Quality Hyundai. (Plf. Resp. ¶ 5.)[1] On January 2, 2004, Owens advised Quality that he suffered from blindness as a complication of diabetes. (Plf. SOF ¶ 1.)[2] Owens provided Quality with a doctor's note stating that he was not able to work due to his condition. (Def. SOF ¶ 7.)[3] Quality authorized Owens' request to take a medical leave of absence. (Plf. SOF ¶ 2.) Owens did not provide Quality with a date that he would return. (Plf. Resp. ¶ 9.)

Nearly one year after he left Quality, Owens met with Novak on December 14, 2004, and told him that he wanted to return to work. (Def. SOF ¶ 12.) During the time that he was not working at Quality, Owens had several eye surgeries but when he returned, he had a doctor's note stating that he could resume work with no restrictions. (Plf. Exs., p. 29.) From January 2 to December 14, Owens had five or six conversations with Dave Novak, a general manager for Quality. (Def. Resp. ¶ 3.)[4] During these conversations, Plaintiff never indicated when he may return to work. (Plf. Resp. ¶ 13.) On December 16, Novak advised Owens that he would not be permitted to return to work. (Plf. SOF ¶ 17.)

---

[1] Planitiff's Response to Defendant's Local Rule 56.1. Statement of Facts.

[2] Plaintiff's Local Rule 56.1 Statement of Facts.

[3] Defendant's Local Rule 56.1. Statement of Facts.

[4] Defendant's Response to Plaintiff's Local Rule 56.1 Statement of Facts.

2

Owens contends that he never told Quality that he expected his leave of absence to be permanent and that Quality verbally expressed that it expected him to return to his duties upon the conclusion of his medical leave. (Plf. SOF ¶¶ 9, 11.) A payroll manager for Quality, Elizabeth Duvick, swears that she "spoke with Mr. Owens in March 2004, at which time he advised me that he was never going to return to work." (Def. SOF ¶ 11.) Ms. Duvick also swears that "[o]n December 14, 2004, Quality's sale positions were fully staffed, and there was no search for salespersons, or open positions, at that time." (Def. SOF ¶ 16.) The last salesperson Quality hired prior to December 14 was on November 4, 2004, and the next salesperson Quality hired after December 14 was on February 14, 2005. (Def. SOF ¶ 17.) Quality never offered Owens an alternative position during the period of his medical leave or when he asked to return to work. (Def. Resp. ¶ 18.)

**Standard of Review**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate only when no reasonable jury could find for the non-moving party. *See Anderson*, 477 U.S. at 248.

**Discussion**

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement,

or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff establishes a *prima facie* case of discrimination by showing that he: (1) is disabled within the meaning of the ADA; (2) is qualified to perform the essential functions of his job either with or without reasonable accommodation ("a qualified individual"); and (3) has suffered from an adverse employment decision because of his disability. *Dvorak v. Mostardi Platt Associates, Inc.*, 289 F.3d 479, 483 (7th Cir. 2002). Defendant does not contest that Plaintiff was disabled.[5] Rather, Defendant argues that Plaintiff was not "a qualified individual" because his need for a lengthy and indefinite leave of absence prevented him from performing the essential functions of his job. And, as to the third prong, Defendant proffers that it terminated Plaintiff because it was fully staffed when he asked to return from his leave of absence, not because of his disability, and that it was unreasonable for it to accommodate Plaintiff by keeping open his sales position for the length of his indefinite absence.

**I.   Qualified Individual**

The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 193 (2002). Defendant argues that because Plaintiff required a lengthy and indefinite leave of absence in order to accommodate his disability that he was not capable of performing the essential functions of his job.

---

[5] An individual is considered disabled under the ADA if: (1) he has an impairment that substantially limits one or more of his major life activities; (2) he has a record of such an impairment; or (3) his employer regards him as having such an impairment. *See* 42 U.S.C. § 12102(2).

4

The determination of whether Plaintiff was a "qualified individual with a disability" must be made on the basis of his "capabilities at the time of the employment decision." *Duda v. Board of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1059 (7th Cir. 1998); *see Nowak v. St. Rita High School*, 142 F.3d 999, 1003 (7th Cir. 1998) ("The determination as to whether an individual is a 'qualified individual with a disability' must be made as of the time of the employment decision"). A genuine issue of material fact exists as to when Plaintiff was terminated. In order for a termination to be effective, the employer must give "unequivocal notice of termination." *Dvorak*, 289 F.3d at 486, citing *Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284 (7th Cir. 1986). Defendant argues that it considered Plaintiff terminated when Plaintiff told payroll manager Elizabeth Duvick in March 2004 that he was never going to return to work. Plaintiff responds that he never told anyone at Defendant that he expected his leave of absence to be permanent and that Defendant verbally expressed that he was expected to return to his duties at the end of his medical leave. Undated employee earnings and deductions statements for Plaintiff have the handwritten comments: "Off on leave of absence – eye surgery;" "Claude on leave of absence so when he comes back put short term and life back in;" and "zero'd out till he comes back." (Plf. Exs., pp. 3-5.) These handwritten comments, along with Plaintiff's statement regarding the temporary nature of his leave, create a genuine issue as to when Defendant terminated him. *See Dvorak*, 289 F.3d at 486 (placing plaintiff on medical leave was "an action consistent only with continued employment"). As such, for purposes of summary judgment, this Court views the termination date as December 16.

Individuals requiring lengthy, indefinite or frequent absences generally cannot "qualify" for protection under the ADA because they cannot perform the essential functions of their jobs. *See Byrne v. Avon Products, Inc.*, 328 F.3d 379 (7th Cir. 2003) ("Inability to work for a multi-month

5

period removes a person from the class protected by the ADA"); *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899-900 (7th Cir. 2000) ("Common sense dictates that regular attendance is usually an essential function in most every employment setting; if one is not present, he is usually unable to perform his job"); *Nowak*, 142 F.3d at 1003 ("Obviously, an employee who does not come to work cannot perform the essential functions of his job"). What materially distinguishes Plaintiff's claim from other cases is that he did not require a prospective period of absence at the time of his termination in order to be accommodated.[6] At the time Plaintiff was terminated, December 16, he avers that he was capable of returning to work without further absence and he had a doctor's note stating that he could resume work with no restrictions. (Plf. Exs., p. 29.) Accordingly, judging Plaintiff's capabilities at the time of the employment decision, it is reasonable to infer that he could perform the essential functions of the sales position with or without reasonable accommodation – in the ADA's terms, a qualified individual. *See Corder v. Lucent Technologies Inc.*, 162 F.3d 924, 928 (7th Cir. 1998) ("The question here, then, is whether Corder could show, at the time she was terminated, that she was able to attend work reliably").

## II.    Discrimination

An employer unlawfully discriminates under the ADA when it fires an employee because of his disability or when it fails to reasonably accommodate that disability. *See Bombard v. Fort Wayne*

---

[6] *See Stolarczyk ex rel. Estate of Stolarczyk v. Senator Intern. Freight Forwarding, LLC*, 376 F. Supp. 2d 834, 848 (N.D. Ill. 2005) ("[A]n imminent absence of this length takes Stolarczyk out of the realm of protection of the ADA"); *Burleson v. Rockford Health System*, 1999 WL 33210, *1-2 (N.D. Ill. 1999) (the employer replaced the plaintiff after she was absent for several months and still required some additional, indefinite leave); *Johnson v. Foulds, Inc.*, 1996 WL 388412, *5 (N.D. Ill. 1996) (when "plaintiff communicated to her employer a present inability to work unaccompanied by any definite prospect that she would soon be able to return to work" it was "an admission that plaintiff cannot perform the essential functions of her job").

*Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996) ("Unlawful discrimination under the ADA includes both discriminatory discharge and the failure to provide reasonable accommodation"). Although the parties tend to meld these concepts into one amalgamated argument, the Court will address them separately.

A.      Adverse Action Because of Plaintiff's Disability

An ADA plaintiff can prove that his employer took the adverse action because of his disability through either the direct or indirect method. *See Timmons v. General Motors Corp.*, 469 F.3d 1122, 1127 (7th Cir. 2006). Under the "direct" method "the plaintiff may show either direct or circumstantial evidence that points to a conclusion that the employer acted as it did for illegal reasons." *Id.* at 1126. The indirect method requires a showing, among other things, that "the circumstances suggest that the plaintiff's disability was the reason the employer took adverse action against him."[7] *Id.* at 1127-28. Under either method, circumstances such as similarly situated non-disabled individuals being treated more favorably, proof that a defendant's non-discriminatory reason for its action is untrue (a pretext) and that a plaintiff was meeting the employer's legitimate expectations all raise an inference that the plaintiff's disability was the true reason for the employer's adverse action. Any other evidence relevant to the employer's motive for taking the adverse action also will be considered. In the end, "[w]hat is always true . . . is that whatever evidence or method

---

[7] "Proceeding under this approach, a plaintiff must first make out a prima facie case of discrimination. Once he has done so, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. If the employer makes that showing, the burden shifts once again to the plaintiff to show the employer's stated reason is simply pretext for discrimination. The plaintiff's prima facie case typically requires a showing that the plaintiff was disabled, performing satisfactorily, subjected to adverse employment action, and treated less favorably than a nondisabled, similarly situated person." *Timmons*, 469 F.3d at 1126 (citations omitted).

of proof the plaintiff resorts to, he must put together a case that permits the inference that the employer has acted against him based on his disability." *Id.* at 1127.

Defendant does not dispute that Plaintiff's work performance was satisfactory. Defendant proffers that it terminated Plaintiff because when he attempted to return to work on December 14, 2004, there were no open positions. Plaintiff presents no direct evidence that Defendant was not fully staffed in December 2004. Plaintiff, however, points to two circumstances that he contends contradict Defendant's proffered, non-discriminatory reason for his termination: (1) no open position was needed because Plaintiff was never fired from his position and (2) Defendant hired salespersons in November 2004 and February 2005.

Defendant's hiring of a salesperson in November 2004 is not evidence that Defendant's reason was a pretext for discrimination. While Plaintiff's physician cleared him to return to work on October 12, 2004, Plaintiff did not advise Defendant that he was ready to work until December 14. With regard to the February 2005 hiring, Plaintiff has offered no proof that the hiring filled a position that was open on December 14. Moreover, Plaintiff did not apply for or make Defendant aware that he had a continued interest in a sales position. *See Konowitz v. Schnadig Corp.*, 965 F.2d 230, 234 (7th Cir. 1992) (an employer's failure to consider a plaintiff for other openings with the company "does not lead to an inference of discrimination, since nothing in the record suggests that he applied for any jobs or informed the company of his interest"); *Sembos v. Philips Components*, 376 F.3d 696, 703 n.5 (7th Cir. 2004) (employer not required to provide special notice to plaintiff of openings). Without more evidence, the jury could speculate that Defendant terminated Plaintiff because of his disability, but a jury could not reasonably infer that it is more likely than not that Defendant did not allow Plaintiff to return to work because of discrimination rather than because it

was fully staffed. *See Senner v. Northcentral Technical College*, 113 F.3d 750, 757 (7th Cir. 1997) (distinguishing between a reasonable inference from mere speculation and holding that "[a] party needs more than a scintilla of evidence . . . to defeat summary judgment"); *Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir. 1994) (non-movant must show "that a discriminatory reason more likely motivated [the employer's] decision or that [its] proffered explanations are unworthy of credence").

### B. Failure to Accommodate

Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," except where the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." § 12112(b)(5)(A). Unlike a more disability *per se* discrimination claim, "when a plaintiff brings a claim under the reasonable accommodation part of the ADA, the burden-shifting method of proof is both unnecessary and inappropriate." *Lenker v. Methodist Hosp.*, 210 F.3d 792, 799 (7th Cir. 2000). In judging what actions an employer must take to accommodation an employee's disability, "[i]t is plain enough what "accommodation" means . . . [t]he difficult term is 'reasonable.'"[8] *See Vande Zande v. State of Wis.*

---

[8] The ADA defines "reasonable accommodation" as:

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

9

*Dept. of Admin.*, 44 F.3d 538, 542 (7th Cir. 1995). While the reasonableness of a requested accommodation is generally a question of fact, certain legal standards exist: "An accommodation is reasonable if it is both efficacious and proportional to the costs to implement it. An accommodation is unreasonable if it imposes undue financial or administrative burdens or requires a fundamental alteration in the nature of the program."[9] *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002) (citations omitted); *see Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 896 (7th Cir. 1996) ("Whether an accommodation is 'reasonable' is a question of fact, determined by a close examination of the particular circumstances").

Plaintiff argues that Defendant could have reasonably accommodated his disability without undue hardship by keeping open a sales position so that he could return when he medical leave of absence was complete. Plaintiff was absent from work for eleven and a half months and at no time before December 14 did he give Defendant a definite date for his return. While an employer must honor a reasonable request for medical leave, "nothing in the ADA requires an employer to give an employee indefinite leaves of absence." *Corder*, 162 F.3d at 928, *compare with Haschmann v. Time*

---

42 U.S.C. § 12111(9).

[9] The qualified individual, *see supra*, and reasonable accommodation analyses dovetail because a qualified individual must be able to perform the essential job functions with a reasonable accommodation while an employer unlawfully discriminates when it does not make a reasonable accommodation to the known limitations of an otherwise qualified individual. Thus, the analyses are usually interdependent – if a proposed accommodation is not reasonable, the employee is not qualified for the job; conversely, if a proposed accommodation is reasonable, the employee is qualified for the job. But, as this case illustrates, this dependence is not absolute because of the differing considerations in the two analyses. Whether an individual is qualified for a job focuses on the employee's capabilities at the time of the employment decision. The determination of whether an accommodation is reasonable requires a court to step back and weigh all of the circumstances surrounding an employee's disability and the burden it places on an employer.

*Warner Entertainment Co.*, 151 F.3d 591 (7th Cir. 1998) (upholding jury verdict that a two to four week request for medical leave was a reasonable accommodation under the ADA). Plaintiff nevertheless argues that his request for medical leave as an accommodation is reasonable under the specific facts of this case. Plaintiff cites the facts that Defendant granted him time off and never indicated that he would not be permitted to return to work. From these facts, Plaintiff concludes that Defendant's attendance policy contains exceptions that reduce the employee's expectations that the procedure will be rigidly followed and that his leave of absence did not disrupt Defendant's operations. But Plaintiff offers no other evidence to support these conclusions – for example, no evidence that other employees were excepted from the attendance policy or that Defendant could carry out its business with fewer salespersons or a temporary replacement for such a long and indefinite period of time. *See Mojica v. Southwest Airlines Co.*, 1999 WL 262130, *7 (N.D. Ill. 1999) ("[B]ecause the cost to the employer of providing an employee an indefinite leave of absence is clearly disproportionate to the benefit, an indefinite leave of absence is not 'reasonable'").

Plaintiff argues that because Defendant granted him time off and never indicated that he would not be permitted to return to work, Defendant has conceded that the accommodation was reasonable. Defendant would have been justified in terminating Plaintiff on January 2 when he asked for an indefinite period of leave. *See Nowak*, 142 F.3d at 1004 ("The ADA does not require an employer to accommodate an employee who suffers a prolonged illness by allowing him an indefinite leave of absence"); *Weiler v. Household Finance Corp.*, 101 F.3d 519, 526 (7th Cir. 1996) (stating the ADA does not require an employer to wait indefinitely for an employee to return to work). The fact that Defendant did not fire Plaintiff as soon as he asked for leave does not itself permit the inference that Defendant considered the leave a reasonable accommodation for his

11

disability. *See Vande Zande*, 44 F.3d at 545 ("And if the employer . . . bends over backwards to accommodate a disabled worker – goes further than the law requires – . . . it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation"). Also, Defendant's alleged assurances to Plaintiff that he could return after his medical leave do not create a reasonable accommodation claim under the ADA.[10] While these assurances may have gotten Plaintiff's hopes up that he could return "[e]mployers should not be discouraged from doing more than the ADA requires even if the extra effort that perhaps raises an applicant's expectations does not work out." *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1023 (7th Cir. 1997); *see Chen v. Galen Hosp. Illinois, Inc.*, 1999 WL 104723, *3 (N.D. Ill. 1999) ("[D]efendant's attempt to accommodate plaintiff by requesting that other employees perform the essential functions of her job for nearly three years does not amount to a concession that the accommodation was reasonable"). Because the ADA does not require an employer to provide an indefinite period of leave, it likewise does not require an employer to keep open an employee's position indefinitely. *See Stolarczyk*, 376 F. Supp. 2d at 849 ("Senator, of course, was free to keep her position open if it chose, but, as explained above, the ADA does not mandate such a step"); *see also Gile v. United Airlines, Inc.*, 213 F.3d 365, 375 (7th Cir. 2000) (stating that the obligation to accommodate reasonably does not mean that employers must "bump" another employee or create a new position).

The final issue involves Defendant's failure to engage in an "interactive process" with Plaintiff to determine whether a reasonable accommodation for his disability was available. The

---

[10] To the extent these assurances give rise to a claim that Plaintiff is entitled to return to work, the claim does not stem from the protections of the ADA.

federal regulations implementing the ADA require an employer to engage in "an informal, interactive process with the qualified individual with a disability in need of the accommodation . . . to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(*o*)(3); *see E.E.O.C. v. Yellow Freight System, Inc.*, 253 F.3d 943, 958-59 (7th Cir. 2001) ("Once the employee [lets the employer know that he is disabled and that he needs an accommodation], the employer has a responsibility to start the interactive process"). Defendant does not contest that it failed to interact with Plaintiff regarding potential accommodations for his disability. The failure to engage in the interactive process, however, may give rise to a claim only when the plaintiff can first show that a reasonable accommodation existed. *See Mays v. Principi*, 301 F.3d 866, 870 (7th Cir. 2002) ("The plaintiff cannot seek a judicial remedy for the employer's failure to accommodate her disability without showing that a reasonable accommodation existed"); *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001) ("However, the failure to engage in the interactive process by itself does not give rise to relief"). Thus, this Court should "look first to whether there is a genuine issue of material fact regarding the availability of a reasonable accommodation, and if it is clear that no reasonable accommodation was available, we stop there." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005). Plaintiff's only proposed accommodation – returning him to his sales position after a lengthy, indefinite period of leave – is not reasonable. Thus, Defendant's failure to engage in the interactive process cannot give rise to a failure to accommodate claim. *See Mays*, 301 F.3d at 871 ("[W]hen no reasonable accommodation is possible the failure to jaw about accommodation is harmless").

**Conclusion and Order**

Because the evidence, viewed in the light most favorable to Plaintiff, does not create a reasonable inference of discrimination or a failure to reasonably accommodate Plaintiff's disability, Defendant is entitled to judgment as a matter of law. Defendant's Motion for Summary Judgment is granted.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: February 15, 2007